16801.   TAYLOR *v.* ATLANTIC COAST LINE RAILROAD CO.

JENKINS, P. J.   Construing the petition most strongly against the pleader, as we must, it is at least capable of the reasonable construction that the defendant's section foreman was palpably acting without the scope of his limited authority, in ordering the decedent to do the particular work in the performance of which he was killed. The master could not be held liable for an injury received by one of its servants in obeying such a command, and the court did not err in dismissing the petition on demurrer.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED MAY 14, 1926.

Action for damages; from city court of Bainbridge—Judge Spooner. August 29, 1925.

Bettie Taylor, suing as the widow of Preston Taylor, deceased, brought an action against the Atlantic Coast Line Railroad Company for the homicide of her husband, alleging, in substance, that the defendant had in its employ one NeSmith in the capacity of section-foreman; that on the day of the injury he was in charge of the defendant's section-hands, including the decedent, at Brinson, Georgia; that the defendant provides its section-foremen with free use of its houses as a part of their compensation, and allows them to use the section-hands in and about their personal affairs, in cutting stove-wood, working gardens, assisting in moving their personal effects into and out of the said houses when the defendant

Master and Servant, 39 C. J. p. 933, n. 48; p. 939, n. 91.
Pleading, 31 Cyc. p. 78, n. 95.

orders the same vacated, and in the performance of other services required of them, the free use of the said section-hands on company time being a part of the compensation of the said section-foremen; that the performance of the said duties upon orders of and under the direction of the section-foremen is within the scope of and a part of the duties of the employment of the section-hands; that on a day named, the plaintiff's husband, as a section-hand on the section at Brinson, Georgia, was under the supervision of the said NeSmith, section-foreman, and that NeSmith had the right and power, given by the defendant, to hire or discharge section-hands; that on the morning of the homicide, at or about 6:30 o'clock, her husband reported for duty at the section-house; that he entered upon the duties of his employment; that the only other section-hand reporting for work was one Bud Cull; that about 7 o'clock that morning NeSmith ordered her husband to help other laborers remove from the section-house which the defendant had assigned to NeSmith for living quarters an upright piano belonging to one Muggridge, who was the predecessor of NeSmith as section-foreman of that section; that Muggridge was vacating said house by order of the defendant; that the piano was placed on a two-horse wagon drawn by two mules; that NeSmith failed to provide any stays or planking at the front and the hind end of the piano, to prevent slipping and rolling; that the mules were skittish and easily frightened, and were not accustomed to hauling pianos; that NeSmith knew this; that the decedent was an ignorant and uneducated negro and did not know how to haul a piano safely, nor could he have ascertained by the exercise of ordinary care that stays or planking were necessary to prevent the piano from slipping or rolling; that he did not know the nature or disposition of the mules; that NeSmith ordered him and Cull to jump up behind the piano and hold it on; that NeSmith failed to warn them of the dangers incident thereto; that they obeyed the command of their superior officer and got on the wagon, taking the position ordered; that the destination of the piano was a house in Brinson, a hundred feet to the west and one hundred yards to the north of the defendant's station at Brinson; that, two feet to the west and in front of the gate of these premises, there was a ditch about one foot in depth; that as the front wheels of the wagon crossed the ditch the piano slipped toward the back of the wagon

a few inches; that Cull failed to hold it to prevent its slipping, but jumped to the right, giving the piano a shove in the direction of the decedent; that the decedent, in accordance with his instructions, endeavored to hold it stationary; that the slipping of the piano frightened the mules and they plunged forward, causing the piano to rush out of the back end of the wagon upon the decedent, carrying him with it, falling upon him and killing him instantly.

The acts of negligence charged in the petition were as follows: that the defendant was negligent by and through its employee and vice-principal, NeSmith, in ordering the decedent into the said dangerous place, upon the wagon, behind the piano, drawn by skittish mules; in failing to warn the decedent of the danger of the said position; in undertaking the moving of the heavy piano without a sufficient number of capable employees; in failing to provide the decedent with a safe place to work; and, by its employee, the said Cull, in failing to steady the piano and prevent its slipping; by said Cull in deserting his place of duty, and by said Cull in shoving the piano in the direction of the decedent; and that the said acts of negligence were the proximate cause of the decedent's death. The defendant demurred, on the grounds: that no cause of action is set forth; that the petition does not set forth a cause of action in orderly and distinct paragraphs numbered consecutively, and that it is vague and indefinite and does not apprise the court or the defendant of the theory on which the alleged liability is based. The court sustained the demurrer, and the plaintiff excepted.

*Harrell & Custer,* for plaintiff.

*R. G. Hartsfield, Pope & Bennet,* for defendant.